UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACTIV LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL PEREZ,<br><br>　　　　Defendant. | No. 20 CV 01296<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION & ORDER**

Pactiv LLC ("Pactiv"), is suing its former employee, Michael Perez ("Perez"), for breach of contract and fraudulent inducement to contract through misrepresentation. Perez has filed a motion to dismiss. (Dkt. 10). For the reasons stated below, the motion is granted.

**LEGAL STANDARD**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation marks and citation omitted); s*ee also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all

possible inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

Ordinarily, a plaintiff need not plead "detailed factual allegations" but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quotation marks and citation omitted). However, under the heightened pleading standard of Rule 9(b), a plaintiff alleging fraud as Pactiv does in Count Two, "must state with particularity the circumstances constituting fraud." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007).

## BACKGROUND

Pactiv is a limited liability company that manufactures food containers.[1] Its headquarters are in Illinois. Michael Perez worked for Pactiv in various roles for 29 years and spent the last 12 years managing one of its California factories. During that time, he lived in Bakersfield, California.[2] When he was promoted to plant manager in 2008, Perez signed a "Confidentiality, Non-Competition, Non-

---

[1] All facts referenced in this Memorandum Opinion and Order are from the Complaint unless otherwise specified.

[2] Pactiv asserts that Perez has since moved to Washington. (Complaint, ¶ 4). Perez states that he is still a resident of California, and that he was served a copy of the Complaint at his Bakersfield address. (Perez Declaration, ¶ 8).

Solicitation, and Invention Assignment Agreement" ("Employment Agreement"). This agreement contained non-disclosure and non-competition provisions as well as a provision specifying that Illinois law would govern disputes.

On November 4, 2019, Pactiv terminated Perez's employment. After negotiations, both parties executed a "Separation Agreement and Release of All Claims" ("Separation Agreement"). The Separation Agreement provided Perez $90,000 in severance pay. The Separation Agreement reiterated that Perez was still bound by both the non-competition and non-disclosure clauses of his Employment Agreement. It also contained a clause requiring Perez to "notify [Pactiv] upon acceptance of employment or the establishment of Perez's own business venture." Finally, the Separation Agreement specified that Illinois law would govern disputes.

Pactiv asserts that during this negotiation process, Perez sought and accepted a job as a factory manager for one of its competitors, Dart Container Corporation ("Dart"), without giving proper notification.[3] Count One alleges Perez violated the non-competition provisions of the Employment Agreement and the Separation Agreement by accepting employment with Dart and is "in a position to use and disclose Pactiv's confidential and trade secret information".[4] Count Two alleges that

---

[3] The Complaint alleges Perez accepted the Dart offer before signing the Separation Agreement. Perez contends that he did not actually accept a job offer from Dart until a few days after he signed his Agreement. (Motion to Dismiss, ¶ 7). At this stage of the proceedings, the Court accepts the allegations in the Complaint as true.

[4] The Complaint alleges that Perez violated both § 6(b) of the Employment Agreement and § 10 of the Separation Agreement. *See* Complaint, ¶ 45 ("In breach of *both* the Agreement and Separation Agreement, Perez accepted competitive employment with Dart, without providing the requisite notice and assurances to Pactiv of such employment."). The Separation Agreement incorporates the "restrictive covenant, non-disclosure, noncompetition, or confidentiality agreements" found in the

Perez's failure to disclose his application and acceptance of employment with Dart during the Separation Agreement negotiations amounted to misrepresentation and fraudulent inducement.

## ANALYSIS

Perez and Pactiv disagree about whether the Court should apply Illinois law or California law when evaluating the sufficiency of the Complaint.

**I. Choice-of-Law**

Federal Courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois follows the Second Restatement of Conflict of Laws, and will generally honor the choice-of-law provisions in a contract unless: "(1) the chosen state has no substantial relationship to the parties or the transaction; or (2) application of the chosen law would be contrary to a fundamental public policy of a state with a materially greater interest in the issue in dispute." *Brown and Brown, Inc. v. Mudron*, 887 N.E.2d 437, 439–40 (Ill. App. Ct. 2008) (paraphrasing the Second Restatement of Conflict of Laws, § 187). *See also Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 13–14 (Ill. App. Ct. 1990) (when "the contract contains a choice of law provision, section 187 of the Restatement applies"); *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009); *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000) ("Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making

---

Employment Agreement, and like the Employment Agreement, contains a duty to disclose future employment. (Complaint, ¶ 32–33).

choice-of-law decisions"); *Hendricks v. Novae Corporate Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017).

Before performing a conflict of laws analysis, however, the party arguing for a departure from the choice-of-law provision in the contract "bears the burden of demonstrating a conflict, i.e., that there exists a difference in the law that will make a difference in the outcome.*" MiMedx Group, Inc. v. Fox*, No. 16 CV 11715, 2017 WL 3278913, at *2 (N.D. Ill. Aug. 2, 2017); *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) ("choice-of-law determination is required only when a difference in law will make a difference in the outcome").

**A. Enforceability of the Agreements under California and Illinois Law**

Perez argues that the Agreements are *unenforceable* in both states, but that in the alternative, a conflict exists because § 16600 of the California Business Code prohibits non-competition agreements outright while "under Illinois [law] there would be more of an analysis of factors." (Dkt. 10, Ex. 3 at 9, 10). Pactiv argues that the Agreements are *enforceable* in both states, because "both California and Illinois law permit the use of restrictive covenants to protect a company's trade secrets and confidential information, particularly in the context of competitive employment."[5] (Dkt. 20 at 6). Therefore, in order to determine whether an actual conflict of laws exists, the Court must first determine the enforceability of the Agreements under

---

[5] Pactiv engages in a single conflict-of-laws analysis for both Agreements, treating them both interchangeably as "non-competition" agreements or "restrictive covenants" allowable under the trade secrets exception. *See* Dkt. 20 at 6–7; *Id*. at 9 ("The Illinois Choice-of-Law Provisions in the Employment and Separation Agreements are Proper Under §187(2).") Because Pactiv treats the Separation Agreement as an extension of the Employment Agreement, and, because neither party has asked it to do otherwise, the Court will apply the same choice of law analysis to both contracts.

5

Illinois and California law. *See Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815 (N.D. Ill. 2019).

    1. <u>Enforceability under California law</u>

The parties agree that the enforceability of the Employment Agreement and the Separation Agreement under California law depends on whether they are void under §16600 of the California Business and Professional Code ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"). In *Edwards v. Arthur Anderson LLP.*, 189 P.3d 235 (Cal. 2008), the California Supreme Court held that § 16600 "prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." *Id*. at 288.

Pactiv argues that the agreements are in accord with *Edwards* because they don't "entirely preclude Perez from operating in his chosen profession, trade, or business, [are] limited to a period of one year, and allow Perez to retain any gainful employment that does not require him to disclose Pactiv trade secrets." (Dkt. 20 at 7). The first part of this argument is foreclosed by the text of *Edwards* itself, which says that "if the Legislature intended [§ 16600] to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect." *Edwards*, 189 P.3d at 292. Therefore, absent an exception, the non-competition clause found in the Employment Agreement and adopted by the Separation Agreement would be void under California law.

6

The second part of Pactiv's argument—the trade secrets exception—has received mixed reviews in the courts. The *Edwards* court expressly declined to "address the applicability of the so-called trade secret exception to section 16600." *Edwards*, 189 P.3d at fn. 4. Pactiv argues that California allows enforcement of Perez's agreements to the extent necessary to protect trade secrets. However, California courts do not automatically apply a "trade secret" exception, as the cases cited by Pactiv demonstrate. (Dkt. 20 at 6–7). Instead the courts engage in a fact-intensive inquiry into whether the non-competition provision is necessary to protect trade secrets.[6]

Here, Pactiv has not made any assertions that Perez misused its trade secrets. To the contrary, Pactiv is not making a "single allegation related to misappropriation

---

[6] In *Retirement Group v. Galante*, 98 Cal. Rptr. 3d 585, 588 (Cal. Ct. App. 2009), the plaintiff accused former employees of using confidential information. Because the defendants were bound by a confidentiality agreement that protected trade secrets, the court found the non-competition clause an unnecessary restraint under *Edwards*. *Id*. at 594. Pactiv argues *Retirement Group* supports the existence of a trade secrets exception, but other courts have read the decision to *question* the existence of such an exception. *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11 CV 02460-LHK, 2011 WL 2607158, at *18 (N.D. Cal. July 1, 2011) (citing *Retirement Group* and saying that "case law protecting trade secrets does not actually create an exception to Section 16600, but instead enables courts to enjoin the misuse of trade secrets as an independent wrong, either as a tort or a violation of the Unfair Competition Law"). *See also LKQ Corp. v. Fengler*, No. 12 CV 2741, 2012 WL 1405774, at *4 (N.D. Ill. Apr. 23, 2012) ("some California courts have questioned the vitality of the [. . .] line of cases defining the trade secrets exception to Section 16600"). Other cases Pactiv relies on are also unpersuasive. In *Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008), the court acknowledged the narrow exception to § 16600 for trade secrets, but the non-competition clause in question was invalidated as "not necessary to protect trade secrets." *Id*. at 758. However, *Aussie Pet Mobile, Inc. v. Benton*, No. SACV 09-1407-AG, 2010 WL 11558091, at *3 (C.D. Cal. Dec. 6, 2010), found an exception to § 16600 to protect trade secrets but then evaluated the contract in question under Ohio law. So too, in *Richmond Technologies Inc. v. Aumtech Business Solutions*, No. 11 CV 02460 LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011), in analyzing the likelihood of success for a preliminary injunction the court found that a non-competition agreement was only likely to be enforceable if narrowly construed to "bar only the use" of confidential trade secrets.

7

of trade secrets or inevitable disclosure."[7] (Dkt. 20 at 13). Rather, Pactiv is asserting that Perez sought and accepted employment at a competitor without informing Pactiv. The Court finds that there is a high likelihood that the non-competition agreements would be void under § 16600 and would not qualify for any narrow trade secrets exception to § 16600.

2. Enforceability under Illinois law

Illinois courts treat non-competition clauses as valid and enforceable if reasonable and necessary to protect a legitimate business interest of the employer. This encompasses an interest in protecting trade secrets. *See Coady v. Harpo, Inc.*, 719 N.E.2d 244, 250 (Ill. App. Ct. 1999) (under Illinois law, "[t]o determine the reasonableness of a restrictive covenant, it is necessary to consider whether enforcement of the covenant will injure the public, whether enforcement will cause undue hardship to the promisor and whether the restraint imposed by the covenant is greater than is necessary to protect the interests of the employer"). Illinois courts also weigh "time limitation and geographical scope" and the "equally important public policy [in favor of] freedom to contract." *Id*. at 250 This is a fact-bound analysis.

---

[7] Perez and Pactiv agree that Illinois recognizes the doctrine of inevitable disclosure, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995), and that California courts reject it, because it "creates a de facto covenant not to compete." *See Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1462 (2002). Pactiv is not relying on the doctrine of inevitable disclosure in this case. (Dkt. 20 at 13). However, the language in the Employment Agreement, that Perez must not accept employment "if doing so would require [him] to inevitably use or disclose Pactiv's Trade Secrets or Other Confidential Information" parrots this doctrine. *Whyte*, 101 Cal.App.4th at 1462–64 ("The inevitable disclosure doctrine results in an injunction prohibiting employment, not just use of trade secrets [. . .] we reject it."). This lends further support to the Court's conclusion that § 6(a)(ii) of the Employment Agreement would likely exceed any permissible trade secrets exception to § 16600.

However, "reasonableness" is clearly a more lenient test than California uses. *See Edwards*, 189 P.3d at 292 ("if the Legislature intended [§ 16600] to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect"). Therefore, the Court assumes without deciding that the non-competitive Agreements would be enforceable under Illinois law. *See, e.g. Gen. Elec. Co.*, 394 F. Supp. 3d at 826 (assuming enforceability of clause under the laws of New York when determining whether an actual conflict of laws existed).

Because the Court finds that the choice-of-law issue will make a difference in the outcome, Perez has demonstrated an actual conflict of laws.

**B. Application of § 187**

The Court applies the Second Restatement to determine whether the law of California or Illinois should govern.[8] Here § 187(2)(a) is inapplicable. Illinois has a substantial relationship to the parties and the transaction because it is the location of Pactiv's headquarters. *See Dancor Const., Inc. v. FXR Const., Inc,* 64 N.E.3d 796, 813. Therefore, the Court moves on to the two-part test laid out in § 187(2)(b):

---

[8] As a threshold matter, the parties disagree about how the Court should perform its § 187 analysis. Pactiv argues that "Illinois courts apply the Restatement (Second) of Conflicts, § 187(1), and, *if necessary*, § 187(2)." (Dkt. 20 at 4, citing *Stromberg Metal Works, Inc. v. Press Tech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996) (emphasis added by Pactiv). *Stromberg* can be distinguished on its facts, and it has not been widely followed. *See Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 915 (N.D. Ill. 2014) ("parties have not identified nor has the Court found an Illinois case following [the *Stromberg*] approach"). Furthermore, as a practical matter, Illinois courts do not perform the § 187(1) analysis before applying § 187(2). *See e.g., Dancor Construction, Inc. v. FXR Construction, Inc.*, 64 N.E.3d 796, 812–14 (Ill. App. Ct. 2016); *State Farm Mutual Auto. Ins. Co. v. Burke*, 51 N.E.3d 1082, 1097–99 (Ill. App. Ct. 2016); *Ocon v. Thermoforming Sys., LLC*, No. 1-12-1670, 2013 WL 2643511, at *4–5; *Old Repub. Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009); *Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 439 (Ill. App. Ct. 2008); *Hendricks v. Novae Corporate Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017); *Cronimet Holdings v. Keywell Metals*, 73 F.Supp.3d 907, 914–15 (N.D. Ill. 2014); *LKQ Corp. v. Fengler*, No. 12 CV 2741, 2012 WL 1405774, at *9–13 (N.D. Ill. Apr. 23, 2012).

9

determining whether application of the law of the chosen state (Illinois) would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.

### 1. Materially Greater Interest

Perez argues that California has a materially greater interest than Illinois because he is a California resident and worked for Pactiv at one of their California facilities. (Dkt. 10, Ex. 3 at 8). He cites *Dancor Construction, Inc. v. FXR Construction, Inc.*, 64 N.E.3d 796, 812–14 (2nd Dist. 2016) and *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 14 (Ill.App.1st Dist. 1990), in which Illinois courts found another state had a materially greater interest in a case. These courts relied on the finding that the "[a]pplication of [another state's law] will have virtually no effect on the citizens of Illinois," *Int'l Surplus Lines Ins. Co.*, 568 N.E.2d at 16, because "[t]he subject matter of the contract, [and] performance of the contract" took place in another state, and the defendant was from another state. *Dancor Const., Inc.* 64 N.E.3d at 814–15. The *Dancor* court also applied another state's law because "[t]he only connection Illinois has to the litigation is [plaintiff's location of] incorporation and place of business." *Dancor Const., Inc.* 64 N.E.3d at 814–15.

Pactiv argues that California does not have a materially greater interest than Illinois in this litigation. While Pactiv is headquartered in Illinois, the locations where the Employment and Separation Agreements were negotiated and signed are not alleged in the Complaint. However, the Employment Agreement was entirely performed in California, where Perez lived and worked before and after he signed it.

10

After weighing these factors, the Court finds that that California has a materially greater interest in this litigation than Illinois.[9]

2. Fundamental Public Policy

The Illinois Supreme Court looks for the public policy of a state in "its constitution, legislative enactments and judicial decisions." *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1270 (Ill. 2000). In *Edwards*, the California Supreme Court said that "following the Legislature, this court generally condemns noncompetition agreements." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (2008). The California Supreme Court continued, "California courts have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." *Id.* at 949.

The Court finds that Illinois courts would apply the substantive law of California to Pactiv's breach of contract claim. California has a strong and long-standing public policy that favors open competition over the common law "rule of reasonableness" governing contractual restraints on the practice of a profession, business, or trade. *See Edwards,* 189 P.3d at 288 (stating that "California settled public policy in favor of open competition" in 1872 with the enactment of § 16600). *See also Schlumberger Tech. Corp. v. Blaker*, 859 F.2d 512, 516 (7th Cir. 1988) ("California is the leading jurisdiction on the other side [of the debate over the

---

[9] Pactiv relies on a series of cases interpreting § 187(2)(a). (Dkt. 20 at 11). This section describes a how courts should proceed "when the chosen state has *no substantial relationship* to the parties or the transaction." The "materially greater interest" standard is contained in § 187(2)(b). Perez is not arguing the Illinois has no substantial relationship, he is arguing that California has the materially greater interest (§ 187(2)(b)) than Illinois.

11

enforceability of restrictive employment covenants], treating almost all restrictive agreements, including many trade secret agreements, as interfering with the public's interest in obtaining the benefits of competition"); *LKQ Corp. v. Fengler*, No. 12 CV 2741, 2012 WL 1405774, at *5 (N.D. Ill. Apr. 23, 2012) ("California has, as a matter of fundamental public policy, 'chosen to provide its workers greater protections' from noncompetition provisions") (citation omitted).

Pactiv is correct that "simply because the application of another state's law would change the outcome of the case, it does not lead the court to find that a public policy is violated. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844–45 (7th Cir. 1994). But California's prohibition on non-competition agreements does embody a fundamental public policy. This Court will therefore apply California law.

## II. 12(b)6 Motion to Dismiss

### A. Breach of Contract Claim

Count One of the Complaint asserts that by seeking and obtaining a job as a factory manager at Dart and failing to disclose the same, Perez breached both his Employment Agreement and his Separation Agreement. (Complaint, ¶ 39). As pled, Pactiv has failed to state a claim against Perez in Count One. Whether non-competition contracts are permissible to protect trade secrets under California law would be a fact-intensive inquiry and would not be appropriate for disposal on a motion to dismiss. However, Pactiv is unequivocal that it is not alleging any impropriety regarding trade secrets. As noted above, before upholding non-competition clauses under the trade secrets exception to § 16600, courts determine

whether these clauses are necessary to protect trade secrets. Absent the need to protect trade secrets, however, restrictions on an employee's profession, trade, or business are void under California law. Therefore, the Court dismisses Count One without prejudice. *See, Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 828 (N.D. Ill. 2019) (dismissing claim against one defendant, McGinnis, because her non-solicitation agreement was governed by California law and therefore void).

### B. Misrepresentation and Fraudulent Inducement

Perez makes several arguments in favor of dismissing Count Two, misrepresentation and fraudulent inducement to contract.[10] The first argument is that Perez's misrepresentation was not material (*i.e.* did not actually induce Pactiv to contract). The second is that Pactiv has not provided a sufficiently detailed description of Perez's misrepresentations in its Complaint, and the third is that Perez was under no duty to disclose that he was seeking employment with Dart, independent of the duty created by the Separation Agreement.[11] Because the

---

[10] The parties agree that the elements of a claim of fraudulent misrepresentation are the same in Illinois and California. *See, Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014); *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 881–82 (7th Cir. 2005) (quoting *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (2003)); *Mueller v. San Diego Entm't Partners, LLC*, 260 F. Supp. 3d 1283, 1295–96 (S.D. Cal. 2017) (citing *Lazar v. Superior Court*, 909 P.2d 981 (1996)).

[11] Perez also argues that Count Two should be dismissed because the Employment Agreement is void under California law. The Court rejects this argument because Count Two is grounded in tort, not contract law. *See W. Indus. Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198, 1206 (7th Cir. 1984) ("the right to be free from fraudulent inducements to contract, does not arise out of a contract."). Moreover, "[w]hile the law generally does not allow for tort recovery for what is essentially a breach of contract, it recognizes a clear exception where the fraud vitiates the making of the contract or where the plaintiff is fraudulently induced to enter into the contract in the first place. *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 869 (N.D. Ill. 2000) (citing *Johnson v. George Ball Inc.*, 617 N.E.2d 1355, 1361 (1993)). Therefore, Perez's reliance on *Cross v. Batterson*, No. 17 C 198, 2017 WL 2798398, at *5 (N.D. Ill. June 28, 2017), which held that a "plaintiff cannot 'bootstrap' a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract," is misplaced. (Dkt. 10, Ex. 3 at 15).

13

sufficiency of the Complaint and the duty to disclose are closely related, they are addressed together below.

1. Actual Inducement

Perez argues that whether he had secured other employment was not material to Pactiv during negotiations about severance pay. He asserts that if Pactiv cared about his future employment it would have distributed his severance pay in installments over time and terminated those payments when he found new employment. But while paying a severance package in installments might be evidence that Pactiv cared about Perez's subsequent employment, it is not the only evidence that could show as much. Pactiv has pled that it was induced by Perez's failure to disclose his new employment. Pactiv will be required to prove that allegation, but at this stage its pleading is enough.

2. Sufficiency of Factual Allegations and the Duty to Disclose

Perez argues that Pactiv has failed to make even a "threadbare recital of the elements for such a claim." (Motion to Dismiss, ¶ 4). Perez is correct that the Rule 9(b) heightened pleading standard applies to fraudulent misrepresentation, and that the Seventh Circuit requires plaintiffs to describe the "who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citation omitted).

Pactiv has alleged the "who" and the "when" with sufficient detail. Pactiv alleges that Perez failed to inform it that he was seeking and had accepted employment with a competitor. "Specifically, Perez failed to disclose that he sought

14

and accepted employment with a known Pactiv competitor." (Complaint, ¶1). Pactiv also alleges Perez "intentionally withheld" and "knowingly withheld" information about his job search during the negotiation process. (Complaint, ¶¶ 36, 49). This conduct purportedly occurred during negotiations that took place between Perez's termination on November 4th and the signing of the Separation Agreement on December 17th. This is a more reasonable time period than courts have found to be overly broad. *See, for example, H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 4:11 CV 04006-SLD-JAG, 2013 WL 5460209, at *3 (C.D. Ill. Sept. 30, 2013) (dismissing a complaint that alleged a 25-month time period).

Requiring more detail about the "where and how" would not shed light on the allegations underlying this Complaint. Pactiv need not identify every email and telephone call that took place during the negotiation between Pactiv and Perez at this point in the proceedings.

However, Pactiv is alleging fraudulent misrepresentation by omission. This requires active concealment. The elements of fraudulent misrepresentation are: (1) a false statement of material fact, (2) made with knowledge that the statement is false, (3) and intent to induce an act, coupled with (4) reliance upon the truth of the statement, and (5) resulting damages. The paradigmatic example of a fraudulent misrepresentation is a false statement rather than an omission. When a plaintiff alleges fraudulent misrepresentation by way of omission, they need not prove that a duty existed because of a special relationship, as they would if they were alleging fraudulent concealment. *See Guvenoz v. Target Corp.*, 30 N.E.3d 404, 425 (2015)

15

(Illinois law recognizes two closely related torts: fraudulent *misrepresentation* and fraudulent *concealment*. Fraudulent concealment requires a plaintiff to allege "that the defendant concealed a material fact when it was under a duty to disclose to the plaintiff."). However, they must demonstrate "active concealment." *Mitchell v. Skubiak*, 618 N.E.2d 1013, 1017 (Ill. App. Ct. 1993).

In *Mitchell*, a seller failed to disclose a defect when asked, instead actively deceiving the buyer. The court said that

> [w]hile silence in a business transaction does not generally amount to fraud, mere silence is quite different from concealment. Silence accompanied by deceptive conduct or suppression of material facts results in active concealment and it then becomes the duty of a person to speak. Under such circumstances, if a party to a contract of sale fails to disclose the whole truth, having the requisite intent to deceive, this amounts to fraud, equivalent to an affirmative falsehood.

*Mitchell*, 248 Ill. App. 3d at 1005 (citing *Russow v. Bobola*, 277 N.E.2d 769 (1972)). The duty to speak arose upon the plaintiff's inquiry. And defendant's failure to disclose "sufficiently states a cause of action for fraudulent misrepresentation." *Mitchell*, 248 Ill.App.3d at 1017.

Pactiv has alleged that Perez failed to inform it about his job offer from Dart. But Pactiv has not alleged any facts that show Perez engaged in active concealment. If appropriate, to adequately state a claim of fraudulent inducement, Pactiv may amend its Complaint. Count Two is dismissed without prejudice.

## **CONCLUSION**

Perez's Motion to Dismiss (Dkt. 10) is granted. Pactiv has leave to amend its Complaint consistent with this opinion.

E N T E R:

Dated: December 4, 2020

MARY M. ROWLAND
United States District Judge

17